```
     IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                 ASHEVILLE DIVISION
                   1:03CV8-MU-02
```

```
DARRELL KEITH BURNETTE,   )
     Petitioner,           )
                           )
        v.                 )        ORDER
                           )
DOUG MITCHELL, Supt.,      )
     Respondent.           )
_____)
```

**THIS MATTER** comes before the Court on petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254, filed January 8, 2003; on the respondents' "Motion For Summary Judgment and Answer . . . ," filed April 4, 2003; and on the petitioner's "Traverse," filed April 14, 2003. For the reasons stated herein, and for the further reasons stated in the respondents' Supporting Brief, the respondents' Motion for Summary Judgment will be granted; and the petitioner's Petition will be denied and dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record of this matter, on October 9, 2001, a grand jury in Haywood County, North Carolina issued two indictments, the first charging the petitioner with Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury in violation of North Carolina law. The other indictment asserted

that the petitioner was an Habitual Felon under North Carolina law. That Habitual Felon Indictment listed the petitioner's three prior felony convictions as a September 8, 1998 conviction for Larceny, a May 28, 1991 conviction for Possession with Intent to Sell and Deliver Marijuana, and an April 25, 1985 conviction for "uttering a forged check."

On March 18, 2002, the petitioner appeared before the Superior Court of Haywood County and tendered his "no contest" pleas to the two charges in accordance with a negotiated plea arrangement. By the terms of that arrangement, the petitioner agreed to enter his "no contest" pleas in exchange for the State's promises to dismiss certain other charges which were pending against the petitioner, and to recommend that the petitioner be sentenced to a presumptive term of no less than 93 months imprisonment.

During the petitioner's Plea and Sentencing proceeding, a "Transcript of Plea" form was completed. That form indicates that in response to the Court's numerous questions, the petitioner stated, under oath, that he and his attorney had fully discussed his case, including the charges, their elements, and his possible defenses to those charges. Similarly, the petitioner advised the Court that he understood those matters as they had been explained by counsel.

Such Form also reflects the petitioner's sworn affirmation

that he was satisfied with his attorney's services.  Accordingly, at the conclusion of that proceeding, the Court accepted the petitioner's "no contest" pleas, and found him guilty of aiding and abetting the charged assault, and found that he was subject to sentencing as an Habitual Felon.

However, after hearing arguments from the petitioner's attorney, the Court rejected the State's recommendation for a presumptive term of imprisonment.  Rather, the Court found as mitigating factors that "<u>almost</u> all" of the petitioner's numerous prior convictions were for misdemeanor offenses, and that he was not the person who actually fired the weapon during the instant Assault.  Therefore, the Court imposed a mitigated sentence of 84 to 110 months imprisonment.

The petitioner did not directly appeal his convictions or sentence.  Rather, on October 7, 2002, the petitioner filed a form-Motion for Appropriate Relief ("MAR" hereafter).  Such MAR was construed as having argued that the petitioner's sentence was unlawful because it exceeded the sentence which his more culpable co-defendant was given; and that his attorney was ineffective for having spent too little time with him, and for having failed to present to the trial court two statements which the petitioner had obtained.[1]  On November 5, 2002, the petitioner's MAR was

---

[1] Although the petitioner also checked a number of boxes on his form MAR relating to additional challenges to his case, the MAR court did not review those matters.  Further, since those additional matters were not (and could not properly be) raised in this proceeding, this Court will not review them.

3

summarily rejected by the MAR Court.

Next, on December 11, 2002, the petitioner filed a Petition for a Writ of Certiorari in the North Carolina Court of Appeals. By that Petition, the petitioner raised the same claims as were raised in his MAR, but also argued that the Habitual Felon Indictment was defective because it erroneously listed a conviction for "uttering and forging" which he had not sustained. Once again, however, by an Order filed December 27, 2002, the petitioner's Petition was denied.

Thus, upon having exhausted all of his State court remedies, on January 3, 2003, the petitioner filed the instant federal <u>Habeas Corpus</u> Petition in this Court. By this amended federal Petition, the petitioner argues that his due process rights were violated by virtue of the fact that his Habitual Felon Indictment referred to an "uttering and forgery" conviction which he never sustained, and by virtue of that Indictment's reliance upon a misdemeanor conviction as one of its predicate offenses. Second, the petitioner argues that the Habitual Felon Indictment was fatally flawed by virtue of its failure to allege a principle felony. Last, the petitioner argues that he was subjected to ineffective assistance of counsel due to his attorney's alleged failure to spend a sufficient amount of time with him, and to raise the foregoing challenges to the Habitual Felon Indictment.

On April 4, 2003, the respondent filed his combined Motion

for Summary Judgment and Answer to the petitioner's Petition. In that document, the respondent denies that the petitioner is entitled to any relief on his claims.

More specifically, with respect to the petitioner's first claim, the respondent argues, <u>inter alia</u>, that the records which he submitted along with his Answer and Motion demonstrate that the petitioner, in fact, did sustain felony convictions for the offenses which were listed in the Habitual Felon Indictment. However, the respondent also argues that even in the absence of such records, the petitioner's <u>de facto</u> guilty plea to the Habitual Felon charge is tantamount to an admission of all of the elements of that offense, and such plea waived all antecedent, non-jurisdictional violations which may have occurred. Thus, the respondent contends that due to the petitioner's failure to show that his proceedings were "fundamentally unfair," such allegations simply cannot support a claim for relief in any case.

As to the petitioner's second claim--that the Habitual Felon Indictment was defective for its failure to allege a principal felony--the respondent argues that such claim also is baseless. That is, the respondent argues that there is no requirement under either North Carolina or federal law that a Habitual Felon charge refer to any other charge which the petitioner is also facing. In fact, the respondent notes that the State Supreme Court has flatly rejected this precise claim.

Concerning the petitioner's third claim that counsel was ineffective, the respondent argues that on this record the petitioner has failed to demonstrate either deficient performance or prejudicial results. Therefore, the respondent contends that his Motion for Summary Judgment should be granted.

Next, on April 14, 2003, the petitioner filed his "Traverse." By that document, the petitioner responds to the respondent's assertions, contending that his documents (which were attached to such Traverse) tend to refute the respondent's arguments that he sustained the "uttering and forging" conviction, or that the drug conviction listed in the Habitual Felon Indictment was a felony conviction. Therefore, the petitioner argues that since the State has failed in its burden of proof on those matters, he should immediately be released from prison.[2]

For its part, the Court has now carefully reviewed the foregoing matters along with the relevant federal legal precedent, and has determined that the petitioner cannot prevail on the instant claims.

## II. **ANALYSIS**

### 1. **Standard of review for habeas petitions**.

Generally speaking, the standard of review to be applied by

---

[2] The Court notes that the petitioner apparently is mistaken regarding who has the burden of proof in the instant action. Indeed, the petitioner's convictions are presumed to be correct, and he is the one who has the burden of demonstrating that he is entitled to relief on one or more of the claims set forth in his Petition. See 28 U.S.C. §2254(e)(1).

6

the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch.

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

7

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).

> **2. The petitioner's claim that the Habitual Felon Indictment is fatally defective is legally baseless**.

As has been noted, by his first claim, the petitioner argues that the Habitual Felon Indictment violated his right to due process because: 1) it relied upon an "uttering and forging" conviction which he never sustained; and 2) it relied upon a misdemeanor drug conviction. However, this Court has carefully reviewed the documents which the respondent has submitted in opposition to the petitioner's Petition, and determined that such documents, in fact, defeat the petitioner's allegations of a due process violation on these grounds.

To be sure, the respondent has submitted a copy of the "Judgment" form which corresponds to the conviction for "uttering a forged check" which the petitioner claims he never sustained. Such Judgment lists the petitioner's correct name and age at the time of that conviction; and it identifies both the date (April 25, 1985) and case number (84CRS6009) for the petitioner's conviction. That information is identical to the information set out in the subject Habitual Felon Indictment.

8

The instant document further reflects that the petitioner received a term of three years imprisonment for that and the several other convictions which he sustained on that occasion. Likewise, the document indicates that the petitioner's three-year sentence was suspended, and he was given a 2-½ year term of supervised probation. In addition, the respondent submitted a copy of the "Judgment And Commitment Upon Revocation Of Suspension Of Sentence" form, reflecting that the petitioner actually failed to comply with the conditions of his supervised probation for the uttering conviction. Consequently, that documents shows that on October 18, 1986, the petitioner's probation was revoked and his three-year sentence was activated.

As for the drug offense which the petitioner claims was reduced to a misdemeanor, the respondent submitted a copy of the "Judgment" form which corresponds to such conviction. According to that form, the petitioner sustained a felony conviction for the offense of possession with intent to sell and deliver marijuana. As with the other matter, such document also identifies the date (May 28, 1991) and case number (91CRS140) as that information was listed in the Habitual Felon Indictment.

Indeed, such document also correctly lists the petitioner's full name and birth date (03/26/62), and it reflects that he received a seven-year sentence for the subject drug conviction. However, the petitioner's sentence was suspended, and a five-year

9

term of supervised probation was imposed.

In addition, the respondent has submitted a copy of the "Transcript Of Plea," from the Hearing during which the petitioner's guilty plea was taken on the drug charge in question. That Transcript correctly reflects the petitioner's age at the time of the plea; it indicates that the petitioner was pleading guilty to several "felonies," including the one at issue here; and it notes that upon his conviction, the petitioner could have been sentenced to as much as twenty years imprisonment--a term which clearly would not have been applicable to a misdemeanor conviction.

For his own part, the petitioner has submitted copies of several documents along with various filings. The first document--a letter from the Clerk of Court for Haywood County--reports that "[t]here is no record of a <u>worthless check</u> conviction for Darrell K. Burnette In Haywood County from 1980 through 2002" (emphasis added). However, inasmuch as the conviction which is listed in the Habitual Felon Indictment is for "uttering a forged check," not for "worthless check" offense, such report is of little value to the Court.

The second set of documents which the petitioner submitted consists of a "Criminal Record Check" which was performed in Haywood County under the petitioner's name for the period between "1981 thru 4/87," along with three excerpts from the public

10

records, which purportedly reflect the result of that search. According to those excerpts, the matters which were revealed by the search were two charges from March 14, 1985 which the petitioner sustained for Assault by Pointing a Gun and Assault on a Female. Furthermore, the excerpts indicate that both of those charges were "[d]ismissed with leave 6 mo[nths] . . . ." That records check also purportedly revealed that on April 6, 1985, the petitioner was charged with Trespassing, but that offense also was "[d]ismissed with leave."

Notably, however, such excerpts do not include the petitioner's date of birth; and, unlike the documents which were submitted by the respondent, one of the excerpts which the petitioner submitted does not even list his full name.

On April 14, 2003, the petitioner also submitted documents along with his Traverse. A review of those materials shows that the petitioner already had submitted all but two of those items with his prior filing. That is, the petitioner resubmitted the aforementioned "Criminal Record Check" and the three excerpts which correspond to that document.

However, the first of the two new documents is a copy of a "Criminal Record Check" form, indicating that another records check was performed in the petitioner's name in Haywood County for the period of January 1977 up to March 31, 2003. The second document which the petitioner submitted purports to be the

11

computerized results of that more exhaustive records check.

According to the print-out, during the period in question, the petitioner sustained a conviction for possession with intent to sell and deliver marijuana. Even more ironically, that print-out even indicates that such conviction was for a felony offense; and that the petitioner received a seven-year term of imprisonment for the conviction. The petitioner's print-out also identifies the case number for that conviction as 91CRS140, the same case number set forth in the Habitual Felon Indictment.

Even more curious than the foregoing matters is the fact that such print-out does not identify the petitioner's 1998 felony Larceny conviction which was also listed in his Habitual Felon Indictment. Indeed, the petitioner does <u>not</u> deny having sustained that Larceny conviction; therefore, if the documents which he presented were complete and exhaustive, they would have listed that Larceny conviction along with the drug conviction.

Consequently, based upon the indicia of reliability which the respondent's submissions carry with them as compared with the questionable value and reliability of the petitioner's submissions, the Court finds that the petitioner has failed to carry his burden of demonstrating that the State court's decision was unreasonable or otherwise in violation of his constitutional.

### 3. **The Habitual Felon Indictment was not fatally flawed**.

Next, the petitioner argues that the Habitual Felon

12

Indictment was fatally flawed due to its failure to charge a current, predicate offense.  In other words, the petitioner contends that the indictment in question was fatally flawed because it did not list a new or pending felony offense as its predicate, but merely set forth his prior convictions as its elements.

Under federal law, in order to "pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998).  Accord Hamling v. United States, 418 U.S. 87, 117 (1974).  Ordinarily, an indictment that tracks the statutory language is sufficient.  See Hamling, 418 U.S. at 117.

Further, when a post-conviction or collateral challenge (such as the instant one) is made, the indictment will be "more liberally construed . . . and every intendment is then indulged in support of . . . sufficiency." United States v. Sutton, 961 F.2d 476, 479 (4th Cir. 1992).  More particularly, "[v]ariances and deficiencies in state indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

A review of the record here reflects that the petitioner is

13

correct that his Habitual Felon indictment did <u>not</u> set forth a pending predicate felony offense. However, there is neither a federal nor state requirement that habitual felon indictments list or otherwise refer to a pending felony in order to be valid. In fact, as was noted by the respondent, in <u>North Carolina v. Cheek</u>, 339 N.C. 725, 727 (1995), the State Supreme Court expressly rejected this precise contention. Rather, that Court stated that in order to be valid, an habitual felon indictment need only "set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that . . . [the] convictions were returned in said felony offenses, and the identity of the court wherein said . . . convictions took place." <u>Id</u>. at 727.

In particular, the <u>Cheek</u> case pointed out that the North Carolina Habitual Felons Act does not authorize an independent proceeding to determine the defendant's status as an habitual felon separate from the prosecution of a substantive felony. <u>Id</u>. Therefore, the <u>Cheek</u> court reasoned that an habitual felon indictment is ancillary to the indictment for the substantive felony, and it need not list such current charge(s). <u>Id</u>.

In the instant case, the petitioner's Habitual Felon indictment did, in fact, set forth the three predicate felonies, along with all of the other pertinent information outlined in the

14

Cheek case. Furthermore, that indictment was presented along with the petitioner's other felony indictment, which charged him with the offense of assault with a deadly weapon. Thus, the petitioner's Habitual Felon Indictment was not fatally flawed, and did not otherwise violate any of his constitutional rights.

### 4. The petitioner cannot prevail on his claim that he received ineffective assistance of counsel.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494

15

(1986), citing United States v. Frady, 456 U.S. 152, 170 (1982). Under these circumstances, then, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. Therefore, if the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

More critically, a petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In the instant case, going first to the prejudice prong of the relevant test, the record reflects that the petitioner has

16

not come close to demonstrating that there is a reasonable probability that, but for his attorney's alleged error, he would have insisted on going to trial. In fact, even after the respondent pointed out this deficiency in his Motion for Summary Judgment, the petitioner still has not hinted or otherwise suggested that he would have gone to trial had it not been for counsel's alleged errors.

Further, as the respondent has correctly noted in his Motion for Summary Judgment, notwithstanding counsel's alleged failure to spend more time with him or to present the statements which he believes should have been presented, the petitioner swore to the Court that he and counsel had fully discussed his case; he swore that he and counsel had discussed possible defenses--which matters arguably would have included any exculpatory statements that could have been presented; and he swore that he was satisfied with his attorney's services. Accordingly, in the absence of any compelling circumstances to show why the petitioner's sworn representations should not now be believed, he is bound by those solemn in-court representations. Via v. Superintendent, 643 F.2d 167 (4th Cir. 1981).

Finally, to the extent that the petitioner is alleging that counsel was ineffective for having failed to challenge the Habitual Felon Indictment on the grounds which the petitioner has herein raised, the Court already has put those matters to rest.

17

That is, the Court has already determined that the subject Indictment was not defective in the ways alleged by the petitioner.  Accordingly, counsel could not have been ineffective for having failed to challenge the petitioner's Indictment on those grounds.

### III. CONCLUSION

The instant record makes plain that the State court's affirmation of the petitioner's convictions did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.  Consequently, the State court's decision is entitled to deference, and it cannot be disturbed by this Court.  In short, the respondent's Motion for Summary Judgment must be granted.

### IV.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the respondent's Motion for Summary Judgment is **GRANTED;** and

2.  That the petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED.**

**SO ORDERED.**

**Signed: January 20, 2006**

*[Signature]*

Graham C. Mullen
Chief United States District Judge